IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BARNWELL,<br><br>           Plaintiff,<br>v.<br><br>LATANYA RINGER WILLIAMS,<br>EVARISTO PERALTA AGUINALDO, JR.,<br>M.D., MARLENE HENZE, M.D., and<br>WEXFORD HEALTH SOURCES, INC.,<br><br>           Defendants. | Case No. 20 C 7799<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Barnwell, who is currently incarcerated, asserts that he was subject to violations of the Eighth Amendment and 42 U.S.C. § 1983 for deliberate indifference to his medical needs. He argues that Physician Assistant LaTanya Williams (Count I), Dr. Evaristo Aguinaldo (Count II), and Dr. Marlene Henze (Count III) were deliberately indifferent to his serious medical need for diagnosis, care, and treatment of his lung cancer by: (1) providing ineffective treatment of his symptoms prior to his cancer diagnosis; (2) not getting adequate emergency care for one incident; and (3) after his cancer diagnosis, delaying treatment causing months of unnecessary pain and suffering. Barnwell also alleges their employer, Wexford Health Sources, Inc. intentionally delayed care by requiring the collegial review of all off-site medical treatments resulting in months of delay (Count IV).[1] For the reasons explained below, Barnwell has failed to create genuine disputes of fact regarding the emergency care received, care prior to his cancer diagnosis, and Wexford's use of the collegial review. However, Barnwell has raised genuine disputes of material fact regarding whether the delay in treatment after his diagnosis

---

[1] Plaintiff also asserts Count V against Defendant Dr. Henze alleging a failure to provide access to clean, cold drinking water. Defendants do not address this claim in their motion for summary judgment.

caused him unnecessary pain and suffering and met the standard for deliberate indifference. Accordingly, the Court grants Defendants' motion for summary judgment in part as to Counts I through III and grants the motion for summary judgment as to Count IV.

**Factual Background**

The Court construes the evidence in the summary judgment record and draws all reasonable inferences in Barnwell's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Barnwell is an individual in custody of the Illinois Department of Corrections currently housed at Stateville Correctional Center. PRDSOF ¶ 2.[2] While incarcerated he received treatment for numerous medical conditions, including respiratory ailments such as asthma and was diagnosed with stage IIIC lung cancer. *Id.* at ¶ 31.[3] A synopsis of Barnwell's respiratory medical treatment can be separated into the following periods: (1) treatment prior to the abnormal x-ray in November 2018; and (2) treatment after the abnormal x-ray.[4]

Prior to November 2018, the treatment for Barnwell's respiratory conditions were as follows:

---

[2] The Court has taken the facts from the parties' Local Rule 56.1 statements. Unless otherwise noted, the above facts are not in dispute. The Court cites to Defendant's LR 56.1 statement of facts as "DSOF" and Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF." Plaintiff did not provide a statement of additional facts pursuant to LR 56.1(b)(3). Defendants argue that the Court should disregard Barnwell's Response Statement of Material Facts for failure to comply with Local Rule 56.1(e) and deem the underlying statements uncontested. Barnwell disputes in part some of the factual assertions and adds new facts in his Response Statement of Material Facts instead of in a Statement of Additional Facts. The Court exercises its discretion and declines to disregard the entirety of Barnwell's Response to Defendants' Statement of Material Facts. The Court has read the underlying documents and takes all facts in the light most favorable to Barnwell.

[3] Barnwell disputes this paragraph in part. He does not dispute that he was diagnosed with stage IIIC non-small cell lung cancer. The remaining disputed facts are not considered.

[4] The Court notes that during this period Barnwell received care for other ailments. However, as this lawsuit focuses solely on deliberate indifference to his respiratory ailments that is what the Court focuses on.

- August 17, 2017: Evaluation with PA Williams for recurrent cough and congestion, assessed with asthma acute flare. Prescribed nebulizer and albuterol medication, chest x-ray, and antibiotic. Referred for follow up in ten days.

- August 25, 2017: Barnwell undergoes chest x-ray. The report notes: "normal study."[5]

- August 28, 2017: Evaluation with PA Williams. Noted cough is better. Second evaluation with the medical director, Dr. Obaisi, for coughing and wheezing. Ordered a steroid and follow up appointment.

- September 13, 2017: Evaluation with Dr. Obaisi. Noted no more cough, lungs clear, and chest x-ray within normal limits.

- December 29, 2017: Presented with a productive cough, labored breathing, wheezing, lung sounds, a fever of 102.1, and elevated heart rate. Evaluated by a nurse who prescribed Tylenol and did not refer Barnwell to additional emergency care.[6]

- December 31, 2017: Evaluated by a nurse. Reported that lungs sounded clear and oxygen level was 97%.

- May 4: 2018: Evaluated by PA Williams. Barnwell reported feeling good but sought a chest x-ray for continued cough. Chest x-ray ordered and medication renewed.

- May 11, 2018: Chest x-ray performed, and report stated: "normal study in every respect."[7]

- August 3, 2018: Evaluated by Dr. Aguinaldo for asthma. Reported that asthma is well controlled. Utilizes a nebulizer treatment daily.

---

[5] Barnwell disputes this fact in part. Barnwell does not dispute he underwent a chest x-ray or that it stated: "normal study." Ex. G, Stateville MR 003011. Instead, he disputes the accuracy of the report – whether the x-ray was a normal study as there was a questionable nodule in the right chest superimposed on the scapula and the adjacent ribs. PRDSOF ¶ 14. Here, the Court is only reviewing what the document stated, not its accuracy.

[6] This visit is not included in Defendants' Statement of Material Facts. Instead, Plaintiff raises it in response to paragraph 18. PRDSOF ¶ 18. The Court considers this evidence based on the underlying medical records and deems the facts admitted. Ex. BB, Stateville MR 002584.

[7] As in footnote five, Barnwell does not dispute that he underwent a chest x-ray or that it stated: "normal study in every respect." Ex. G, Stateville MR 000874. Instead, he disputes the accuracy of the report – whether the x-ray was a normal study as there was an irregular shaped 6 to 7 mm nodule. PRDSOF ¶ 20. Again, the Court is only reviewing what the document stated, not its accuracy.

3

- September 6, 2018: Evaluated by Dr. Aguinaldo after reports of feeling off and being winded. Evaluation notes no appearance of respiratory distress, no wheezing, pulse oximeter result of 96%.

- September 12, 2018: Evaluated by PA Williams. Barnwell complained of congestion and was assessed with an upper respiratory infection and asthma. Prescribed steroid, antibiotic, and cough drops.

- November 9, 2018: Evaluated by PA Williams for upper respiratory tract infection and asthma exacerbation. Prescribed a nebulizer, antibiotic, steroid, and cough drops.

*See* PRDSOF ¶¶ 13-16; 18-25.[8] After over a year of treatment for his asthma and respiratory ailments, Barnwell underwent yet another chest x-ray on November 20, 2018. PRDSOF ¶ 26. The x-ray found a 3x4 cm patch opacity with ill defined margins in the right upper lobe. *Id.* This concerned the providers, PA Williams and Dr. Henze, who met with Barnwell on November 26, 2018, to recommend a referral for a chest CT scan at the University of Illinois at Chicago Medical Center. PRDSOF ¶ 27.[9]

To undergo care outside of Stateville, the providers initiated the collegial review process, wherein a recommendation and referral was requested and approved. PRDSOF ¶ 31.[10] This process could be expedited but was not for Barnwell. *Id.* After the abnormal x-ray, Dr. Henze prepared a referral and report for Barnwell to receive a CT at University of Illinois at Chicago.

---

[8] For each of these paragraphs, Barnwell does not dispute that he received some medical treatment for respiratory ailments, instead he disputes that the treatment received was "prompt, adequate, and within the standard of care, given that he complained of serious respiratory symptoms… was only treated with ineffective medication management, and was never probed for significant risk factors like his history of smoking and family history of lung cancer." PRDSOF ¶¶ 13-16; 18-25. This is improper legal argument. The outlined care is supported by medical notes and deemed admitted.

[9] Barnwell does not dispute these facts. Ex. G, Stateville MR 0000092; 000317. Instead, he disputes that the treatment plan, including the collegial review process, constituted prompt and appropriate treatment within the standard care based on Barnwell's cancer diagnosis. This is improper legal argument. The outlined care is supported by medical notes and deemed admitted.

[10] Plaintiff disputes this paragraph in part noting that there is a collegial review process that outside medical care must be approved through, although this can be bypassed for an emergency situation. PRDSOF ¶ 31. The Court considers this evidence based on the underlying records and deems the facts admitted.

PRDSOF ¶ 27. Barnwell received a chest CT, followed by a second CT. PRDSOF ¶¶ 27-32.[11] He then received further referrals and recommendations for care to allow for the diagnosis and treatment of his lung cancer including an MRI, a pulmonary evaluation, an oncology evaluation, chemotherapy, and immunotherapy. *Id.* The process of referral, diagnosis, and treatment took months. *Id.* As a result of the perceived delay in diagnosis and treatment, Barnwell filed multiple grievances with prison administration. No action was taken and, as a result, this lawsuit was initiated.

**Discussion**

Barnwell brings five causes of action in this case all arising under the Eighth Amendment and 42 U.S.C. § 1983. Defendants move for summary judgment on four counts asserting that: (1) Barnwell failed to exhaust his administrative remedies before filing this suit; (2) Barnwell failed to establish deliberate indifference against the individual defendants, PA Williams (Count I), Dr. Aguinaldo (Count II), and Dr. Henze (Count III); (3) Barnwell's *Monell* claim against Wexford (Count IV) fails as a matter of law; and (4) Barnwell has not presented factual evidence supporting his claim for punitive damages.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence

---

[11] For each of these paragraphs, Barnwell does not dispute that he received the underlying medical treatment for cancer, instead he disputes that the treatment received was "prompt and appropriate treatment within the standard of care, especially taking into account Mr. Barnwell's life-threatening cancer diagnosis." PRDSOF ¶¶ 27-32. This is improper legal argument. The outlined care is supported by medical notes and deemed admitted. The argument related to delay in care is address in depth below.

favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249.

## Failure to Exhaust Administrative Remedies

Defendants initially assert that Barnwell failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see, e.g.*, *Porter v. Nussle*, 534 U.S. 516 (2002). District courts are directed to look at state laws to see what procedures are actually available for exhaustion. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016).

The claims in this case arise under Illinois law which has created a three-stage process for inmates filing complaints. *Pyles*, 829 F.3d at 864. Step one requires that an inmate attempt to resolve any problems through their counselor. *Id.* (*citing* Ill. Admin. C. tit. 20, § 504.810(a)). If that does not resolve the issue, then the inmate moves to step two by filing a written grievance with the grievance officer. *Id.* The grievance must be filed within sixty days of discovering the problem, unless the inmate "demonstrate[s] that [it] was not timely filed for good cause." *Id.* The action is then considered by the grievance officer and chief administrative officer. *Id.* (*citing* § 504.830(d)). The chief administrative officer advises the grievant of the outcome and then, if displeased, the inmate moves to step three where they may appeal the decision to the director of the Illinois Department of Corrections. *Id.* (*citing* § 504.850(a)). If further review is required, the Administrative Review Board evaluates the appeal. *Id.* (*citing* § 504.850(b)). An emergency grievance procedure also exists that allows for the above process to be condensed.

6

Defendants contend that plaintiff failed to exhaust his administrative remedies because the grievance at issue was not timely filed and is thus "indefinitely unexhausted." Exhaustion is necessary even if the prisoner believes that it is futile. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006) (*citing Booth v. Churner*, 532 U.S. 731 (2001)). When a prisoner fails to properly use the grievance process, the administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. *Id.* at 809. However, prison officials may not take unfair advantage of the exhaustion requirement. *Id.* Thus, administrative remedies become "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *Id.* As the failure to exhaust administrative remedies is an affirmative defense, the burden of proof is on the Defendants to establish that the administrative remedies were not exhausted. *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022).

Defendants focus on a sole grievance filed on May 5, 2020, that was determined to be untimely by the Administrative Review Board because the biopsy of Barnwell's lung cancer was completed on February 22, 2019, over a year before the grievance. However, this was not the only grievance raised by Barnwell relating to his lung cancer diagnosis. Barnwell has filed numerous grievances regarding issues while incarcerated. On May 28, 2018, he filed a grievance complaining that he is a chronic asthmatic which was made worse from the mold in his unit with no open windows. In this grievance he noted that he has "lung cancer" which he believes he got at Stateville. Ex. AA, IDOC ARB Grievance Records 000089-90. This complaint went through the three-step process. *Id.* First, going to Barnwell's counselor, who rejected the request as emergent and denied it as they were "unable to substantiate any staff misconduct." *Id.* Barnwell then appealed this to the grievance officer who denied the appeal a second time. *Id.* at 000088. After which, he appealed to the Director of Illinois Department of Corrections who denied the

7

grievance again at step three. *Id.* at 000087. Barnwell then submitted two additional grievances on May 5, 2020, both of which sought money and blamed staff for contributing to his cancer diagnosis. *Id.* at 000009-10; 000071-77; 000082-86. Both grievances were submitted to the counselor and then heard by the administrative review board. *Id.* One, as noted above, was denied for being untimely rendering it indefinitely inexhaustible. *Id.* at 000082. However, the other was denied because the requests were not "grievable issues." *Id*. at 000071.

As noted above, when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation" an administrative procedure is unavailable and thus incapable of exhaustion. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Here, the second May 2020 grievance was not denied based on a procedural timing technicality but on the fact that the requests were not grievable issues. Disregard of a prisoner's medical treatment or contributing to worsening of a medical condition is a grievable issue as exhibited by numerous cases in this Circuit. *See, e.g.*, *Greeno v. Daley*, 414 F.3d 645, 648 (7th Cir. 2005); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 660 (7th Cir. 2016); *Duckworth v. Ahmad*, 532 F.3d 675, 677 (7th Cir. 2008). By telling Barnwell his concerns were not grievable, despite being so, the prison interfered with the grievance process in a manner that rendered it unavailable. *Ross*, 578 U.S. at 644. This prevented Barnwell from continuing with the grievance process and submitting his claim to the director as he was incorrectly told that nothing could be done. Barnwell therefore did not fail to exhaust the claim. Instead, the grievance process was made unavailable.

The issue of administrative exhaustion was also forfeited. Administrative exhaustion is an affirmative defense that should be resolved at the outset of prisoner litigation. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Here, merits discovery has closed, and the parties have moved for summary judgment on substantive issues. Defendants represented to this Court in October

8

2022 that they "no longer believe[d] an exhaustion of administrative remedies defense [wa]s available." Docs. [85][87]. Over a year later, this motion for summary judgment was filed regarding not only substantive issues, but also a failure to exhaust administrative remedies. "Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 536 (7th Cir. 1999). As explained by the Seventh Circuit, certain situations call for district courts to address the merits of a suit instead of relying on § 1997e(a), such as when a summary judgment motion is fully briefed on the merits, discovery is closed, and there is a complete factual record with all information needed to resolve a case on its merits. *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 792-93 (7th Cir. 2013). That is the case here. Given the year-long delay in raising the exhaustion issue, and the fact that multiple grievances were filed (one which was fully exhausted and another where exhaustion was rendered unavailable), judgment cannot be entered for the Defendants on the issue of administrative exhaustion. The Court moves on to the merits of the claims below.

**Counts I, II, and III: Deliberate Indifference**

Barnwell brings claims against PA Williams, Dr. Aguinaldo, and Dr. Henze for violation of the Eighth Amendment and 42 U.S.C. § 1983 based on their deliberate indifference to Barnwell's serious medical need for diagnosis, care, and treatment of his lung cancer. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Whiting*, 839 F.3d at 661-62 (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (cleaned up). To prevail on deliberate indifference claims, Barnwell must prove that he: (1) had an objectively serious medical condition, and (2) that each individual provider was deliberately, that is subjectively, indifferent. *Id.* at 662. For summary judgment purposes, Defendants are not contesting that Barnwell's lung cancer was a serious medical

9

condition. Thus, the Court focuses the analysis on whether each individual Defendant was deliberately, or subjectively, indifferent.

A prison official is deliberately indifferent only if they "know of and disregard[] an excessive risk to inmate health or safety." *Id.* The state-of-mind element is measured subjectively – the provider must know of facts from which they could infer that a substantial risk of serious harm exists, and they must actually draw the inference. *Id.* An inadvertent failure to provide adequate medical care cannot constitute an unnecessary and wanton infliction of pain. *Id.* When a prison medical professional is accused of providing inadequate treatment, in contrast to no treatment, evidence of medical negligence or a mere disagreement in medical judgment is not enough to prove deliberate indifference. *Id.* Instead, evidence must exist that the defendant knew better than to make the medical decision. *Id.* at 662-63. This evidence might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in a treatment known to be ineffective, or proof that the treatment departed radically from the accepted professions judgment practice or standards such that a jury may infer the decision was not based on professional judgment. *Id.* at 663.

Barnwell asserts that PA Williams, Dr. Aguinaldo, and Dr. Henze were deliberately indifferent by: (1) not diagnosing Barnwell's lung cancer prior to the abnormal chest x-ray in November 2018, despite his respiratory complaints, and providing ineffective treatment; (2) failing to get Barnwell access to emergency medical care on December 29, 2017; and (3) failing to provide proper care after the November 2018 x-ray.

First, Barnwell contends that PA Williams and Dr. Aguinaldo should be liable for deliberate indifference of his symptoms prior to his abnormal chest x-ray in November 2018. The Seventh Circuit's decisions in *Duckworth* and *Whiting* are instructive on this point. *Duckworth*, 532 F.3d at

680-81; *Whiting*, 839 F.3d at 661-62. In both cases, the Seventh Circuit confronted a claim that prison officials should have ordered testing for cancer sooner based on the plaintiff's symptoms. In *Duckworth*, one treating physician did not suspect cancer and the second physician was aware of the risk but thought that plaintiff had another condition. *Duckworth*, 532 F.3d at 680-82. Thus, the second physician pursued a course of treatment consistent with that diagnosis. *Id.* The plaintiff in *Duckworth* provided expert testimony that someone should always rule out cancer, but the Seventh Circuit held that the expert's testimony showed only how a reasonable doctor would treat the plaintiff's symptoms and did not exhibit the defendant doctor's state of mind. *Id*. Thus, judgment as a matter of law was properly entered for the defendant provider. Similarly, in *Whiting*, there was no evidence presented that the doctor treating the patient initially for an infection but later discovered lymphoma, knew better than to pursue that course of treatment, or that there was a substantial departure from acceptable medical judgment. *Whiting*, 839 F.3d at 663. Again, judgment was properly entered as a matter of law for the defendant provider.

      As in *Whiting* and *Duckworth*, the evidence presented here does not exhibit that PA Williams and Dr. Aguinaldo knew of and disregarded an excessive risk to Barnwell's health or safety when they pursue the course of treatment they prescribed. Prior to the November 21, 2018 x-ray, Barnwell was being consistently treated for asthma and respiratory ailments and he argues that the fact he repeatedly complained of chest discomfort, coughing for weeks at a time, recurrent congestion, shortness of breath, labored breathing, fever, and increased heart rate shows he had severe symptoms and should have been asked about his family and prior medical history. If done, he contends his cancer would have been caught earlier. However, the individual Defendants were not ignoring these symptoms but treating Barnwell for asthma and respiratory ailments during this period. In fact, these treatments appeared to help as the medical records indicated periods where

11

Barnwell's asthma was stable and well controlled, his cough was better, and his lungs were clear. Barnwell has not established that the Defendants knew better than to make the medical decisions to treat his asthma and respiratory concerns and instead look for other potential underlying medical conditions. *Whiting*, 839 F.3d at 662-63. Likewise, the Defendants are not responsible for a delay in diagnosing Barnwell before the November 2018 x-ray because there has been no showing that the Defendants knew of his cancer or radically parted from accepted professional judgments.

Barnwell attempts to further his deliberate indifference argument by noting that his respiratory medical treatment was ineffective. He contends that one of his experts, Dr. Herrington, opined that the fact Barnwell was using an albuterol nebulizer (a treatment for opening airways) daily to manage his symptoms showed he was being undertreated for asthma and that his providers neglected the standard of care. Barnwell also notes that a radiology expert opined that there was evidence of a questionable finding in the May 11, 2018 x-ray showing a 6 to7 mm nodule. But evidence of potential medical negligence or a mistake in professional judgment is not enough to prove deliberate indifference. *Whiting*, 839 F.3d at 662. As in *Duckworth* and *Whiting*, there has been no evidence presented regarding the Defendants' state of mind. State-of-mind evidence might include obviousness of the risk from a particular course of treatment, persistence in a course of treatment known to be ineffective, or proof that a treatment departed radically from accepted professional judgment or practice. *Id.* at 663. No evidence has been presented to show that PA Williams and Dr. Aguinaldo knew about an obvious risk of cancer in their treatment of asthma or respiratory ailments. Nor has the evidence exhibited that the Defendants were persisting in a treatment they knew to be ineffective. Further, Barnwell's radiology expert agreed that the nodule

on the chest x-ray in May 2018 could have been missed by a physician. PRDSOF ¶ 33.[12]  Barnwell has also not presented any evidence that PA Williams and Dr. Aguinaldo departed *radically* from accepted medical judgment by not diagnosing the cancer and instead treating Barnwell for his respiratory ailments.  In *Duckworth*, the plaintiff provided expert testimony that an experienced doctor should always rule out cancer when a patient presents certain symptoms. 532 F.3d at 681.  That evidence was not enough to show deliberate indifference or a departure from accepted medical judgment. *Id.*  The evidence here is less than what was presented in *Duckworth*.  Barnwell has presented no evidence that the Defendants should have screened for cancer and that not doing so was a radical departure from accepted medical judgment.  Instead, he focuses his argument on the fact that Defendants failed to act within the standard of care, but negligently applying the standard of care is not the correct standard.  Instead, this Court must evaluate if a jury could find that Defendants radically departed from accepted professional judgments.  As in *Duckworth*, no evidence has been put forward to support such a finding. *Id.*  Thus, judgment must be entered as a matter of law regarding the care before the November 2018 x-ray because Barnwell cannot prove that Defendants were deliberately indifferent.

       The second incident Barnwell takes issue with was his medical emergency on December 29, 2017.  On that date, Barnwell experienced symptoms of a productive (mucus/phlegm) cough, labored breathing, wheezing, lung sounds, a fever of 102.1, and elevated heart rate.  The issue with this argument is that none of the individual Defendant providers treated Barnwell on that day.  Individual liability requires "personal involvement in the alleged constitutional deprivation," here, the underlying care. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).  As Dr. Aguinaldo,

---

[12]  Plaintiff disputes does not dispute the testimony provided by his radiology expert, Dr. Calandra, but instead argues Defendants failed to adhere to the standard of care by not diagnosing the nodule. PRDSOF ¶ 33.  This statement is deemed admitted and the argument regarding standard of care is addressed above.

13

Dr. Henze, and PA Williams were not present on December 29, 2017, there is no evidence that they were deliberately indifferent to Barnwell's care on that day, nor can they be held responsible for a failure to refer Barnwell to an outside provider for that event. Thus, judgment as a matter of law can be entered as to the care received on December 29, 2017.

Finally, Barnwell alleges that Dr. Henze, Dr. Aguinaldo, and PA Williams inexplicably and unconscionably caused delays in treatment following the November 2018 abnormal chest x-ray. Specifically, Barnwell contends that Defendants failed to timely refer him to an oncologist and begin treatment. In cases where prison officials delay rather than deny medical assistance to an inmate, the Seventh Circuit has noted that a plaintiff must offer verifying medical evidence that the delay (not the inmate's condition) caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Verifying medical evidence can be expert testimony that the plaintiff suffered because of a delay in treatment or medical record evidence that shows a delay unnecessarily prolonged and exacerbated pain. *Id.* at 715-16. Here, both types of evidence have been put forward creating genuine questions of material fact. First, there is medical evidence of potential harm from the delay. Barnwell noted that he fractured his hip after falling from a low height in September 2019. According to Dr. Aguinaldo and Dr. Henze, this injury was likely related to the metastasis (spread) of his cancer. *See* Ex. C, Aguinaldo Dep. at 75:15-76:8; Ex. D, Henze Dep. at 27:15-28:1.[13] Questions of material fact remain regarding whether faster diagnosis and treatment would have limited the spread of cancer and stopped Barnwell from experiencing pain and other injuries such as his hip fracture. Further, in the time between diagnosis and treatment, Barnwell complained of coughing up blood, and thus questions of fact remain regarding

---

[13] Here again, this information was not included in Defendants' Statement of Material Facts. Instead, Plaintiff raised it in response to paragraph 10. PRDSOF ¶ 10. The Court considers this evidence based on the underlying deposition transcripts and deems the facts admitted.

whether these symptoms could have been cleared up or limited with a more expeditious treatment. PRDSOF ¶ 29.[14] Barnwell's expert, Dr. Harrington, has also contended that by abiding by the collegial review process and delaying Barnwell's care, there was extreme deviation from the standard of care by the Defendant providers.[15] Thus, material questions of fact exist regarding whether Barnwell's pain from cancer metastasis and symptoms could have been decreased by faster treatment such that Defendants were deliberately indifferent in causing delays in Barnwell's treatment after the November 2018 x-ray. Summary judgment is granted in part and denied in part as to Counts I through III.

### Count IV: Monell Liability Against Wexford

In Count IV, Barnwell brings a claim against Wexford pursuant to Section 1983, which creates a private right of action against any person who violates a plaintiff's federal rights. 42 U.S.C. § 1983. The Supreme Court has found municipalities are persons who may be sued under § 1983 for their own violations of the federal laws and the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-94 (1978)). The Seventh Circuit has noted that *Monell* governs Wexford's liability in § 1983 cases, as private corporations acting under the color of state laws are treated as municipalities. *Id.* To prove a *Monell* claim against Wexford, Barnwell must show: (1) municipal action giving rise to liability; (2) deprivation of a federal right; and (3) rigorous causation establishing a direct

---

[14] Plaintiff does not dispute that he was coughing blood, and thus this fact is deemed admitted.

[15] Defendants request that the Court disregard the opinion of Barnwell's rebuttal expert on summary judgment because rebuttal opinions are not allowed in Barnwell's case in chief. This is not the law of this Circuit which allows consideration of rebuttal experts in motions for summary judgment if admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Defendants also ask this Court to find that Barnwell's rebuttal expert's (Dr. Herrington) opinion is inadmissible because it is based on speculation. The Court need not reach this analysis as there is enough verifying medical evidence of harm in the record to raise material questions of fact.

causal link. *Id.* Barnwell asserts two violations of his constitutional rights: (1) that Wexford's employees' repeated failure to address Barnwell's medical needs suggested a policy of deliberate indifference; and (2) that Wexford's use of the collegial review policy is unconstitutional as applied.

The Seventh Circuit's opinion in *Dean* is instructive for both arguments. *Dean* dealt with an individual who developed kidney cancer while incarcerated and sued Wexford as the prison healthcare provider. *Id.* at 221. The Seventh Circuit reversed the district court's denial of judgment as a matter of law on the Eighth Amendment claim against Wexford for multiple reasons. *Id.* at 244. First, it noted that municipalities could not be vicariously liable for the constitutional torts of their employees or agents. *Id.* at 235. Instead, it is only liable for its own violation of the federal Constitution and laws. *Id.* The plaintiff in *Dean* relied on an express policy – collegial review – to show a constitutional deprivation. *Id.* The Seventh Circuit held that collegial review is not unconstitutional on its face. *Id.* at 236 (*citing Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 659 (7th Cir. 2021)). The Seventh Circuit then reviewed whether collegial review caused unconstitutional delays as applied to the plaintiff. *Id.* The Court noted that this type of claim presents difficult problems of proof, as it often must show a series of violations. *Id.* In *Dean*, the plaintiff had not introduced any substantive evidence of a pattern or practice of similar violations, nor offered evidence that the collegial review caused unconstitutional delays for other prisoners, just for plaintiff's own healthcare. *Id.* at 237. The Seventh Circuit held that the plaintiff failed to show that the collegial review itself – not simply the actions of the employees administering it – directly caused the constitutional deprivation. *Id.* at 238-39. Thus, the claim failed because there was no evidence of Wexford's knowledge that collegial review would violate plaintiff's constitutional rights in a single-incident case. *Id.* at 239.

16

Applying the reasoning of *Dean* here dictates that Barnwell's *Monell* claim fails. Here, as in *Dean*, Barnwell was incarcerated when he developed cancer and has sued Wexford under the Eighth Amendment as the prison's healthcare provider for the alleged failures of its employees. As noted by the Seventh Circuit in *Dean*, municipalities cannot be vicariously liable for the constitutional torts of employees or agents. *Id.* at 235. Thus, Wexford cannot be held liable because three medical providers allegedly failed to address his medical needs and discover his lung cancer sooner.

Barnwell also challenges Wexford's use of the collegial review process and alleges it was unconstitutional as applied to him. Again, *Dean* instructs this Court's analysis. As the Seventh Circuit has noted, collegial review is not unconstitutional on its face. *Id.* (*citing Howell*, 987 F.3d at 659). As applied to him, Barnwell argues that Wexford failed to hold and schedule collegial reviews which negatively affected numerous inmates, including himself. As expressed in *Dean*, this type of as applied violation presents difficult problems of proof because the "Supreme Court has made clear that a plaintiff seeking to hold a municipality liable for a facially lawful policy must prove a pattern of similar constitutional violations resulting from the policy." *Id.* As in *Dean*, Barnwell has not introduced any substantive evidence of a pattern or practice of similar violations for other inmates, only that there was a policy of holding collegial reviews. Nor has Barnwell offered evidence that the collegial review caused unconstitutional delays for other prisoners, rather just for his own healthcare. *Id.* at 237. Summary judgment must be granted on Count IV.

### Punitive Damages

Defendants' final argument is that Barnwell should be barred from seeking punitive damages. Punitive damages require proof that an individual was "motivated by evil motive or intent," or reckless or callously indifferent to someone's constitutional rights. *Turner v. Pollard*, 564 F. App'x 234, 239 (7th Cir. 2014). Because this case involves the Eighth Amendment, the

17

level of culpability required for a finding of liability matches the punitive damage standard. *Id.*; *see also Walsh v. Mellas*, 837 F.2d 789, 801-02 (7th Cir. 1988). As there are still questions of material fact as to whether there was deliberate indifference for Counts I through III for the care provided after Barnwell's November 2018 x-ray, the question of punitive damages must remain. Defendants' motion for summary judgment on punitive damages is denied.

## Conclusion

For these reasons, Defendants' motion for summary judgment [130] is granted in part and denied in part. Defendants' motion for summary judgment is granted in part on Counts I through III for care provided prior to Barnwell's November 2018 x-ray and denied as to care after the November 2018 x-ray. Defendants' motion for summary judgment is granted in full as to Count IV and denied in all other respects.

**SO ORDERED.**

Dated: October 1, 2024

_____
Sunil R. Harjani
United States District Judge